WESLEY, Plaintiff, v. ELECTRIC AUTO-LITE CO., Defendant.

Common Pleas Court, Hamilton County.

No. A-155720. Decided January 30, 1959.

Robert A. Wilson, for plaintiff.
Taft, Stettinius & Hollister, for defendant.

## OPINION

By LEIS, J.:

This is an action brought by Ransom Wesley against the Electric Auto-Lite Company for wages allegedly due him from the defendant. Plaintiff is an employee of the defendant and is a member of the Local 68, Metal Polishers, Buffers, Platers and Helpers International Union. Plaintiff stands in the shoes of a third party beneficiary to a contract entered into between defendant and plaintiff's bargaining unit, said Local 68, and for his claim avers that defendant corporation has breached said contract, thereby resulting in a loss to plaintiff of some fifty-six hours of work at $2.60½ per hour.

The demurrer of the plaintiff to defendant's amended answer having

been overruled, the case was tried before the Court, a jury having been waived. After all the evidence was presented, the case was submitted to the Court for decision, and, subsequently, counsel submitted comprehensive briefs to aid the Court in its decision. After a study of these briefs, the evidence and all exhibits, and the pertinent authorities, the Court is ready to render its decision.

By way of background, it should be stated that the defendant corporation was engaged in the manufacture of various electric auto accessories, including automotive lamps. While defendant produced for various customers, the Chrysler Corporation accounted for approximately eighty-five per cent of the volume of production (R. 49). The evidence shows that beginning in December of 1955, the orders to defendant from its chief customer, Chrysler, were cut severely by what counsel for defendant aptly described as a "blizzard of cancellations." These cancellations continued until the early part of February 1956 (R. 69-70). George A. Kessel, Plant Manager of the Lockland plant for defendant corporation, testified on direct examination that such a condition was "very abnormal," and that he had never seen such a volume of cancellations in a like period (R. 71). At the time of the cancellations, the plant was working a five day week. Due to the order cancellations, the decision was made by defendant corporation to cut down to a four day week without a reduction in working force (R. 72). As a result, plaintiff was laid off seven consecutive Fridays from February 10, 1956 to March 1956, although he reported for work each of the seven Fridays in question (R. 39-40). Therein lies the crux of this lawsuit.

It is the claim of plaintiff that being third man in seniority in his union (R. 39), he was entitled under Local 68's contract with defendant corporation, to continue his full time work week, until probationary employees, and those employees with less seniority than he were laid off first.

Both parties cite the agreement of July 11, 1955, between the Electric Auto-Lite Company Lamp Division and the Metal Polishers, Buffers, Platers and Helpers International Union in support of their positions.

There are three pertinent parts of this Agreement to which the Court will refer.

The first part is Article III (A) "Working Hours":

"(A) **Eight (8) consecutive hours, except for the lunch period, shall constitute a normal work day, and forty (40) hours of five (5) consecutice days** (Monday, Tuesday, Wednesday, Thursday and Friday) **shall constitute a normal week's work** except when a holiday occurs on these days, in which event thirty-two (32) hours shall constitute a week's work." (Emphasis added.)

The next part is Article VI (G) which the Court will label the "seniority clause":

"(g) **When it becomes necessary to reduce the working force of a department, probationary employees will be laid off first. Thereafter, layoffs will be made according to seniority to provide normal eight (8) hours per day and forty (40) hours per week for employees in the polishing and buffing departments;** and seven and one-half (7½) hours per

day and thirty-seven and one-half (37½) hours per week for the plating department. **The Committee will fully consider any proposed deviation from the above procedure.**" (Emphasis added.)

The third section is Article XV, which this Court will label the "management clause":

"**It is understood and agreed that the right to manage and conduct its business, is specifically reserved exclusively by the COMPANY.**" (Emphasis added.)

To put it simply, plaintiff says that under the seniority clause he is entitled to a forty hour week until all those with less seniority than he are laid off first; defendant says that the seniority clause applies only to normal work days and normal work weeks, and that the conditions in February and March 1956, were not normal; therefore, under the management clause the Company had the right to cut to a four day week.

What is the purpose of a seniority clause? Are the seniority and management clauses in conflict? What did the parties intend?

"In construing any written instrument, whether it be .a will, contract, statute, or constitution, the primary and paramount rule is: **What was the intent or purpose of the makers of such written instruments?** And it is conceded to be the almost universal law that that intent or purpose shall be chiefly gathered from the language employed in such instrument." **The State, ex rel. Maher, v. Baker, 88 Oh Ap 165** at page 172. (Emphasis added.)

"The proper rule in interpreting contracts is to ascertain intention of parties and to give effect to that intention if it can be done consistently with legal principles. Intention of parties to contract is to be gathered not from particular words and phrases, but from entire language used in agreement, if it can be done." **Coe v. The Suburban Light & Power Co., 32 Oh Ap 158.**

We come to the conclusion that this matter resolves itself to a determination of the intention of the parties to the contract.

In determining such intention we should first give mention to Article VI (G), the seniority clause.

Seniority refers to an employee's length of time with his employer "A seniority list is composed of the first employees hired by the management" (R. 15). Such a list shows the duration of the service with the Company, "and the man with the longest period of service is up the list and the man with the shortest period of service is down the list" (R. 16).

Seniority rights arise out of the contract between employer and employee and the fact that an employee has worked for his employer for a number of years gives rise to no seniority rights unless the employer and employees have so contracted; however, seniority rights so fixed by contract will be protected by the courts as property rights. See **Hess v. The Trailer Company of America, 31 O. O. 566.**

To protect such seniority rights, Article VI (G) of the contract in dispute was included. It is undisputed that the plaintiff has high seniority in the union, being third man from the top on the seniority

list (R. 39). It is clear that the plaintiff has a legal right to the protection of his seniority rights under this contract. The seniority clause is unambiguous and unequivocal when it recites that "probationary employees will be laid off first. Thereafter, lay-offs will be made according to seniority." Obviously this clause was meant by the parties to have effect and to be legally enforceable as seniority is one of labor's most sought after contractual rights; and the clause certainly would never have been incorporated in this Agreement if the intent was to render it a barren phrase. (174 A. L. R. 572 et seq.) The plaintiff is entitled to enforcement of Article VI (G) to protect his seniority rights.

But, contends counsel for defendant, conditions were not normal as contemplated in Article III (A); moreover, the management clause specifically reserves to the Company the right to manage and conduct its business.

"The language of a contract should be interpreted so as to subserve, and not subvert, the general intention of the parties." 12 Am. Jur., "Contracts" Section 241.

A study of all the evidence discloses the intention of the parties to the contract to protect seniority rights.

What then, is the purpose of Article III (A)? This article defines a normal work day and a normal work week. Its function is definitive in nature. For purposes of application of the contract, it sets a standard and defines a work day and a work week. The word "normal" as used in this provision, in the opinion of this Court, has no reference to business conditions or amount of sales.

"All provisions should, if possible be so interpreted as to harmonize with each other." (12 Am. Jur. "Contracts" Section 241, supra.)

Citing the management clause, counsel for defendant ably argues that conditions were not normal, and therefore the Company had the right to manage and conduct its business by cutting back to a four day week in lieu of a general lay off. The management clause cannot be utilized to sever contractual rights vested in other parts of the contract. There is an implication in the management clause that the right to manage and conduct its business is specifically reserved by the Company **so long as it does not destroy contract rights created elsewhere in the contract or render void other provisions which are entitled to effect.** (Emphasis added.) If the management clause stood alone with the power to prevail over or veto all other provisions of the contract, there would be no need for the parties to sit down and bargain to arrive at a contract agreeable to both. The management clause has for its purpose to leave matters not specifically provided for in the contract to the company. The management clause, however, cannot be paramount and cannot destroy rights specifically and unequivocally created elsewhere in the contract.

The evidence is uncontradicted that Local 68 refused to accept any deviation from the clause protecting seniority; that although other unions at Auto Lite agreed to join management in the cut back to four days, Local 68 demanded adherence to the provisions of the July 11, 1955, Agreement.

The Court appreciates the problem with which defendant was confronted in February 1956. Its decision at a time of stress was difficult and not enviable. The Court, in light of the evidence, however, interprets the contract as entered by two competent parties.

Upon the evidence and law, the Court finds that plaintiff is a third party beneficiary to the contract of July 11, 1955, between The Electric Auto-Lite Company Lamp Division and the Metal Polishers, Buffers, Platers and Helpers International Union; that plaintiff being third man on the seniority list has a contractual right under the seniority clause VI (G) to have those with less seniority laid off first; that plaintiff's employment was reduced contrary to the provisions of the seniority clause and that plaintiff is entitled to recover therefor.

A judgment entry for the plaintiff in the amount prayed for in the petition may be presented.